UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILTON SYKES, | No. 2:12-cv-2570 TLN KJN P |
| Plaintiff, | |
| v. | ORDER |
| ATHANNASIOUS, et al., | |
| Defendants. | |

Plaintiff is a state prisoner, currently incarcerated at the California Health Care Facility in Stockton, California. Plaintiff proceeds, in forma pauperis, in this civil rights action filed pursuant to 42 U.S.C. § 1983 and California state law. Plaintiff is represented by court-appointed counsel. The action proceeds on plaintiff's First Amended Complaint, in which he raises claims arising from defendants' alleged failures in providing him with medical treatment. Presently before the court are two motions to dismiss, one brought by defendant Dr. Khaira, and the other by defendants Dr. Aguilera and Dr. Haile. For the reasons set forth below, the undersigned orders further briefing from the parties before issuing findings and recommendations herein.

I. Background

A. Procedural History

This case proceeds on plaintiff's First Amended Complaint, against defendants Dr. Athannasious, Dr. Weiland, Dr. Bick, Dr. Aguilera, and Dr. Haile, each of whom was

1

employed as a physician at California Medical Facility ("CMF"), in Vacaville, California, and Dr. Khaira, who was employed as a physician at the Queen of Valley Hospital and retained by CMF as plaintiff's urologist. The FAC includes claims under the Eighth Amendment for deliberate indifference to plaintiff's serious medical needs (against all defendants), under California state law for negligence (against all defendants), and under the First Amendment for retaliation against plaintiff for exercise of his legal rights (against unnamed "CHCF prison staff").

Plaintiff filed his First Amended Complaint on October 1, 2014. (ECF No. 79-1.)

On October 31, 2014, the undersigned issued findings and recommendations recommending dismissal of defendants CMF and California Department of Corrections and Rehabilitation ("CDCR") on grounds of Eleventh Amendment immunity. (ECF No. 87.) On December 12, 2014, those findings and recommendations were adopted by the assigned district judge. (ECF No. 95.)

On November 21, 2014, defendants Dr. Athannasious, Dr. Bick, and Dr. Weiland filed a joint answer. (ECF No. 88.)

Now pending before the court are the following:

- Defendant Dr. Khaira's motion to dismiss plaintiff's Section 1983 and retaliation claims against him, and to strike plaintiff's prayer for punitive damages under his state law negligence claim. ("Khaira MTD," ECF No. 92.) Plaintiff filed an opposition ("Khaira Oppo.," ECF No. 99), and defendant filed a reply ("Khaira Reply," ECF Nos. 101, 102).

- Defendants Dr. Aguilera's and Dr. Haile's motion to dismiss plaintiff's claims against them based on the applicable statute of limitations. (ECF No. 103.) Plaintiff filed an opposition (ECF No. 107), and defendants filed a reply (ECF No. 109).

B. Factual Allegations

In the operative First Amended Complaint ("FAC," ECF No. 79-1), plaintiff alleges as follows.

At all pertinent times, plaintiff was an inmate at CMF. (Id. at 3.)

2

Plaintiff had previously been treated for tuberculosis in 1996, and for bladder cancer in 2003. (Id. at 6.) Plaintiff alleges that both conditions were treated successfully, and that he showed no signs of recurrence of either condition until 2009. (Id.)

According to plaintiff, in 2009, defendants Dr. Aguilera and Dr. Haile improperly administered Interferon and Ribavirin to plaintiff. Plaintiff alleges that these defendants coerced him into signing waiver and/or consent forms; that they did not inform him of possible side effects and risks based on his age and medical history; that they did not inform him that the treatment was experimental; and that they failed to follow the proper protocols for administering the drugs. (Id. at 7.) Plaintiff states that, shortly after he began receiving Interferon and Ribavirin, he experienced the following symptoms: passage of blood in his urine and semen, blockage of his urinary tract, the development or reoccurrence of cancerous nodules in his bladder, and a resurgence and spread of his tuberculosis. (Id. at 5, 7-8.) In one instance, plaintiff experienced difficulty in breathing and passed out; he was then taken to Queen of the Valley Hospital in Napa, California for emergency treatment. At Queen of the Valley, he was allegedly informed that his kidneys could not process all of the medications that he had been administered, and that his doctors at CMF should have been aware of this fact. (Id. at 7.)

In 2010, defendant Dr. Athannasious performed surgery on plaintiff to remove cancerous nodules from his bladder. (Id. at 5, 8.) Afterwards, Dr. Athannasious placed plaintiff on a Bacille Calmette-Guerin ("BCG") treatment. (Id.) According to plaintiff, he subsequently began to suffer from incontinence, blood clots in his urine and semen, back-up of urine into his kidneys, nocturnal enuresis, an intermittently weak and strong urine stream, and pain in his groin. (Id. at 5, 8-9.) Plaintiff alleges that he now has to wear a condom while he sleeps in order to catch blood and urine that spills out at night; during the day, he wears a leg bag for the same reason. (Id. at 9.) Plaintiff contends that these symptoms resulted from the surgery being improperly performed, as well as the BCG treatment; plaintiff also asserts that Dr. Athannasious failed to warn him of the risks associated with the BCG treatment. (Id. at 5,9.)

In August 2010, plaintiff was seen by defendant Dr. Khaira, a urologist at Queen of the Valley Hospital, who recommended an emergency cystoscopy and possible "biopsy versus

3

transurethral bladder resection." (Id. at 8.) As of September 2010, plaintiff had not received these treatments. (Id.) On January 26, 2012, Dr. Khaira performed surgery on plaintiff, during which time he implanted a stent. (Id. at 9.) Plaintiff claims that the stent placement was necessitated by the surgery and the BCG treatment administered by Dr. Athannasious. (Id. at 5.) Plaintiff describes the ensuing events as follows:

> Dr. Khaira . . . directed that Plaintiff follow up with him in 2-4 weeks to "discuss pathology results, and also to assess if his left-sided pain has alleviated with the placement of the ureteral stent." On February 21, 2012[,] Dr. Khaira examined Plaintiff and noted that "Plaintiff reports his flank pain has completely resolved," but he still has some left lower quadrant pain, but it is certainly severe in nature"; "His main complaint is terminal dysuria, which is likely related to the indwelling ureteral stent"; ["]He denies any hematuria or fevers" (see Dr. Khaira's 2/21/12 medical report).  Dr. Khaira's notes indicate that he agreed with Plaintiff that Plaintiff should return in 3 months to plan on taking out the stent; and that Plaintiff was to follow up with him if problems arose before the scheduled 3-month follow-up visit.  A few days after being examined by Dr. Khaira, in addition to continuing to experience the problem of passing urine in his sleep and blood with his semen, Plaintiff began to experience new, shocking pain in his groin.  Plaintiff complained to the CMF doctors of this new pain[,] which kept growing in intensity.  Plaintiff was examined by Dr. Sanders of the CMF, and she concluded that the stent in Plaintiff had become infected and that immediate intervention by Dr. Khaira was required. Dr. Sanders communicated her findings to Dr. Khaira.  Dr. Khaira refused to operate to remove the stent until it had been in place for at least 90 days.  The infected stent in Plaintiff went untreated for an unreasonably long period, ultimately resulted in plaintiff going "man down" 4 times within one month due to unbearable pain. When Plaintiff went "man down" the fourth time, he was in so much pain that he was crying even as the guards/nurses took him to the prison hospital ward. [. . .] Plaintiff's penis was full of pus, and a culture test was performed.  Plaintiff . . . was eventually rushed to San Joaquin General Hospital[1] where he received treatment and underwent emergency surgery during which the stent was removed. This was followed by about 8 days of hospitalization . . . ; it was determined that the stent had been infected for several days.[2]

(Id. at 9-10.)

---

[1] Plaintiff elsewhere alleges that his admission to San Joaquin General Hospital took place "around April 2012." (ECF No. 79-1 at 11.)

[2] Plaintiff later alleges that "[t]he staff urologist at San Joaquin General Hospital . . . determined that the stent had been infected for a long time." (ECF No. 79-1 at 12.)  The apparent contradiction between an infection lasting "several days" and one lasting a "long time" is not resolved elsewhere in the FAC.

4

Plaintiff was also treated by defendants Dr. Weiland and Dr. Bick, who were physicians at CMF during the time between the stent's implantation and its removal. Plaintiff alleges the following acts and omissions by Drs. Weiland and Bick during this period:

- On December 28, 2011, plaintiff had a consultation with a urologist employed by the University of California, San Francisco. This urologist requested a urine test for cancer cells and ordered a cystoscopy, both on an urgent basis. As of January 25, 2012, Dr. Bick had ordered these services on a routine basis, rather than an urgent basis. (Id. at 11.)
- When plaintiff went "man down" for the first time due to pain from the infected stent, Dr. Weiland became angry at plaintiff. Rather than diagnose the source of the pain, Dr. Weiland interrogated plaintiff about a lawsuit that he (plaintiff) had filed. Dr. Weiland thereafter refused to treat plaintiff. (Id. at 10.)
- "Dr. Weiland and Dr. Bick allowed the infected stent in Plaintiff's bladder to go untreated for an unreasonably long period by placing his request for referral services on a routine basis instead of on an urgent/emergency basis." (Id. at 11.)

Finally, plaintiff alleges that defendant Dr. Bick was the Chief Medical Officer at CMF, was the supervisor of defendants Dr. Aguilera, Dr. Haile, and Dr. Weiland, and was responsible for their acts and omissions. (Id. at 10-11.)

Plaintiff seeks damages, injunctive relief, and attorney's fees. (Id. at 19-20.)

III. Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure[3] provides for motions to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant Rule 12(b)(6), the court must accept as true the allegations of the complaint in question, Erickson v. Pardus, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked

---

[3] Hereinafter, the term "Rule" refers to the applicable Federal Rule of Civil Procedure.

5

assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Furthermore, a claim upon which the court can grant relief must have facial plausibility.  Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim.  Hal Roach Studios v. Richard Reiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.  Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984).  In general, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).  The court has an obligation to construe such pleadings liberally.  Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, the court's liberal interpretation of a pro se complaint may not supply essential elements of the claim that were not pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

IV.  Analysis

      A.  Defendant Dr. Khaira's motion to dismiss

Defendant Dr. Khaira moves to dismiss plaintiff's Section 1983 claim against him under Rule 12(b)(6).  Dr. Khaira argues that plaintiff has not alleged sufficient facts to demonstrate that he (Dr. Khaira) was acting under color of state law when he treated plaintiff, and therefore, that he may not be named as a defendant under plaintiff's Section 1983 claim.  (Khaira MTD, ECF No. 92 at 8-9.)

Plaintiff counters that "when the state becomes entangled in a private party's actions so that the state and the private party have a symbiotic relationship, the private party may be deemed a state actor for Constitutional purposes."  (Khaira Oppo., ECF No. 99 at 3) (citing Burton v.

Wilmington Parking Auth., 365 U.S. 715 (1961)). Plaintiff contends that CDCR/CMF and Dr. Khaira were in fact so "entangled," citing the following facts:

1. "Dr. Khaira was a partner with Napa Valley Urology Associates . . . [which] was under contract with [CDCR] to provide urological services to inmates." (ECF No. 99 at 3-4.)
2. "Dr. Khaira and/or Napa Valley Urology Associates was selected and hired by CMF to provide urological treatment and care to Plaintiff." (Id. at 4.)
3. "The urological services provided by Dr. Khaira were formerly provided by a CMF staff urologist – [defendant] Dr. Athannasious. CMF retained Dr. Khaira to provide urological services for inmates after Dr. Athannasious retired." (Id.)
4. "Plaintiff did not have the right to select an urologist of his own choosing." (Id.)
5. "CMF compensated Dr. Khaira using wholly public funds." (Id.)
6. "CMF was inextricably involved in every interaction between Plaintiff and Dr. Khaira, and together with Dr. Khaira, it controlled when and where Plaintiff received treatment from Dr. Khaira." (Id.)
7. "All or some of Dr. Khaira's reports were made or provided to CMF." (Id.)
8. "CMF benefits from its relationship with Dr. Khaira because the medical treatment and care he provided allowed CMF [to] discharge its duty to provide medical care to Plaintiff and other inmates." (Id.)
9. "Dr. Khaira's conduct in refusing to remove the infected stent is fairly attributable to [CMF] and [CDCR]."[4] (Id.)

In reply, Dr. Khaira points out that very little of the factual content set forth above is pled in the body of the FAC or the attached exhibits, and therefore, that the court may not consider it in ruling on his motion to dismiss. (ECF No. 102.)

Dr. Khaira is correct. "Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly

---

[4] The court notes in passing that this is a conclusory statement of the sort that is disfavored in considering whether a plaintiff has properly alleged a claim. See Iqbal, 556 U.S. at 678.

submitted as part of the complaint may be considered." Hal Roach Studios, 896 F.2d at 1555 n. 19 (internal citations omitted).  The court cannot consider allegations advanced only in plaintiff's opposition in ruling on Dr. Khaira's motion.

Absent these additional allegations, there is insufficient factual content pled in the FAC to support a Section 1983 claim against Dr. Khaira.  In general, private actors' conduct may qualify as state action for purposes of Section 1983 under four circumstances: "(1) the private actor performs a public function; (2) the private actor engages in joint activity with a state actor; (3) the private actor is subject to governmental compulsion or coercion; or (4) there is a governmental nexus with the private actor." George v. Sonoma Cnty. Sheriff's Dept., 732 F. Supp. 2d 922, 933 (N.D. Cal. 2010) (citing Gorenc v. Salt River Project Agric Imp. and Power Dist., 869 F.2d 503, 507–08 (9th Cir. 1989); Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003)).  The only factual allegations in the FAC regarding a connection between Dr. Khaira and a state or governmental actor are as follows:

- "Defendant Dr. Khaira is an employee of the Queen of the Valley Hospital assigned by the CMF as Plaintiff's urologist . . . ."  (FAC, ECF No. 79-1 at 4.)
- "In January 2012 Dr. Khaira of the Queen of the Valley Hospital, who was selected by the CMF as Plaintiff's urologist, implanted a stent in Plaintiff which subsequently became infected . . . ."  (Id. at 5.)

Standing alone, these two allegations are insufficient to meet any of the four tests for a private actor's conduct to qualify as state action under Section 1983.

It may be that the allegations advanced in plaintiff's opposition, when considered together with the allegations pled in the FAC, suffice to qualify Dr. Khaira as a defendant in a Section 1983 lawsuit.  Numerous cases have recognized that, for purposes of Section 1983, the private provision of medical services may count as state action.  See, e.g., West v. Atkins, 487 U.S. 42, 56 n. 15 (1988) ("[A]lthough the provision of medical services is a function traditionally performed by private individuals, the context in which respondent performs these services for the State (quite apart from the source of remuneration) distinguishes the relationship between respondent and West from the ordinary physician-patient relationship.  Respondent carried out his

1  duties at the state prison within the prison hospital.  That correctional setting, specifically
2  designed to be removed from the community, inevitably affects the exercise of professional
3  judgment."); Lopez v. Dep't of Health Servs., 939 F.2d 881, 883 (9th Cir. 1991) ("Here the
4  district court's sua sponte dismissal was improper because Lopez's complaint alleges that
5  defendants Maryvale Samaritan Hospital . . . and Southwest Ambulance Service . . . are under
6  contract with the state of Arizona to provide medical services to indigent citizens.  These
7  allegations are sufficient to support a section 1983 action because under either the joint action or
8  the government nexus analysis they set forth a claim that defendants Southwest and Maryvale act
9  under color of state law."); Ayala v. Andreasen, No. 04-cv-00903-RRB-CMK, 2007 WL 1395093
10 (E.D. Cal. May 10, 2007) ("His employer—Queen of the Valley Hospital—was under a contract
11 with state prison authorities for inmate referrals.  As an agent of the hospital, defendant Klingman
12 performed the catheter removal surgery pursuant to that contract and a referral approved by state
13 prison officials.  There is nothing to meaningfully distinguish these facts from West, where a
14 private physician performed medical services under a contract to do so.").

15         Ordinarily, the court would recommend granting defendant Dr. Khaira's motion to
16 dismiss, while simultaneously granting plaintiff leave to file an amended complaint.  The Ninth
17 Circuit has made clear that "[d]ismissal with prejudice and without leave to amend is not
18 appropriate unless it is clear . . . that the complaint could not be saved by amendment."  Eminence
19 Capital, 316 F.3d at 1052 (citing Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996)).  In the
20 instant case, it may be that some or all of the additional allegations set forth in the opposition
21 could save plaintiff's claim from dismissal.  However, the court is mindful that allowing plaintiff
22 to file an amended complaint at this juncture would likely invite another motion to dismiss,
23 further delaying the proceedings herein.  And, as discussed below, in opposing defendants'
24 Dr. Aguilera's and Dr. Haile's motion to dismiss, plaintiff similarly raised a potentially-material
25 allegation that was not pled in his complaint.  It appears that, at this juncture, further briefing is
26 the most efficient means of resolving the ambiguities raised by plaintiff's dual oppositions.  The
27 details of this briefing will be set forth below.

28         The court now turns to defendants Dr. Aguilera's and Dr. Haile's motion to dismiss.

B.  <u>Defendants Dr. Aguilera's and Dr. Haile's motion to dismiss</u>

Defendants Dr. Aguilera and Dr. Haile jointly move to dismiss all claims against them as barred by the applicable statute of limitations.

These defendants' argument runs as follows. Plaintiff filed his original complaint on October 15, 2012. (ECF No. 1.) He therein made no reference to Dr. Aguilera or Dr. Haile, or to his treatment with Interferon and Ribavirin. Yet the FAC, which was filed on October 1, 2014, now contains allegations regarding Dr. Aguilera's and Dr. Haile's administration of Interferon and Ribavirin to plaintiff in 2009. (ECF No. 79-1.) These defendants argue that plaintiff's claims against them were subject to a two-year statute of limitations, and were therefore time-barred even when plaintiff filed his original complaint. Accordingly, defendants contend that, even if the newly-pled claims asserted in FAC were found to relate back to the original complaint, they would still be time-barred. (Aguilera-Haile MTD, ECF No. 103 at 4.)

In opposition, plaintiff contends that his claims against Dr. Aguilera and Dr. Haile are not time-barred. (Oppo. Aguilera-Haile MTD, ECF No. 107 at 3.) He explains:

> In 2009[,] when plaintiff complained about the effects of Interferon and Ribavirin treatment, he was erroneously informed that the symptoms were simply normal side effects and that his treatment was proper. Thus Plaintiff had no knowledge and could not know of any injuries attributable to the said Interferon and Ribavirin treatments. It was subsequently after he continued experiencing the adverse side effects – blood in urine and semen, and growth of cancerous nodules in his bladder that Plaintiff became aware of being actually injured.

(<u>Id.</u> at 3.) Plaintiff also notes that his initial complaint documented the injuries that allegedly stemmed from administration of Interferon and Ribavirin. He also cites the fact that he moved to amend his complaint in July 2013 and in August 2013 to name Dr. Aguilera and Dr. Haile as defendants. (<u>Id.</u>)

Defendants Dr. Aguilera and Dr. Haile counter that plaintiff cannot avail himself of the late discovery doctrine to toll the applicable statute of limitations. (ECF No. 109 at 1.) They also renew their assertion that plaintiff cannot avail himself of the relation back doctrine to save his claims. (<u>Id.</u> at 1-2.)

////

Defendants are correct that Section 1983 does not incorporate a statute of limitations; instead, courts are instructed to apply the applicable limitations period for personal injury actions under the forum state's law. Lukovsky v. City & Cnty. of San Francisco, 535 F.3d 1044, 1048 (9th Cir. 2008). Defendants are also correct that California law specifies a two-year statute of limitations for personal injury actions. Cal. Code Civ. Proc. § 335.1.[5] However, federal law is clear that a "claim accrues 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" Lukovsky, 535 F.3d at 1048 (quoting TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999)). The determination of when the plaintiff knew or had reason to know of the injury "requires an inquiry into what a plaintiff would need to prove in order to succeed on his theory of the case . . . ." Rosales-Martinez v. Palmer, 753 F.3d 890, 896 (9th Cir. 2014); see also Payne v. Arpaio, No. 09-cv-1195-PHX-NVW, 2009 WL 3756679 (D. Ariz. Nov. 4, 2009) ("There is some debate [within the Ninth Circuit] about what constitutes the 'injury' resulting from deliberate indifference to a serious medical need. Two empirically distinct injuries are: (1) lack of medical care that is cruel and unusual punishment and (2) the bodily injury that flows from the lack of medical care."). Nevertheless, "a mere continuing *impact* from past violations is not actionable." Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001) (internal quotation omitted) (emphasis in original). Finally, while federal law governs the determination of when claims accrue in Section 1983 cases, state law applies to determinations of equitable tolling. Hardin v. Straub, 490 U.S. 536 (1989).

The undersigned has carefully examined the FAC and the exhibits attached thereto in an attempt to ascertain when plaintiff first knew, or had reason to know, of the adverse effects of

---

[5] The court assumes that plaintiff is not entitled to the benefit of California Code of Civil Procedure § 352.1(a), which tolls the statute of limitations for up to two years for certain civil actions brought by prisoners who are serving less than life sentences. See Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999) (applying Cal. Code Civ. Proc. § 352.1). In reaching this conclusion, the court is guided by the fact that, in 2011, it appears that plaintiff filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, in which he states that he was sentenced to three consecutive life sentences. See Sykes v. Dickinson, No. 2:11-cv-00742-SVW-AGR (C.D. Cal. Jan. 25, 2011) (ECF No. 1). If the court's assumption is incorrect, and plaintiff was serving less than a life sentence during the relevant time period, plaintiff should so indicate in his further briefing.

11

Interferon and Ribavirin, and is unable to reach a firm conclusion on the question. Plaintiff has attached as an exhibit to the FAC an inmate grievance on CDCR Form 602, dated June 28, 2009, which provides in pertinent part:

> The side effects from the Ribavirin 200 mg that was started on 5/13/09 was too much for me. On 6/03/09, approximately one month later I asked doctor John Doe, some questions about the Ribavirin. 1) Could it kill me? Doctor John Doe, told me yes people have died from Ribavirin. I told [him] that I was now urinating blood. At this time my red blood count had dropped down to a low. Dr. John Doe ordered shots for me two (2) times a week to raise my red blood count. I asked Dr. John Doe some more questions. 1) Was my liver in any eminent [sic] danger? The doctor[']s answer was there is a protocol that should be followed for a person who was already suffering from kidney problems . . . . I have to wonder why didn't a red flag go up concerning the state of my kidney and all of the medications I was already taking.

(ECF No. 79-1 at 25). In this inmate grievance, plaintiff sought a referral to an outside kidney specialist as a remedy. (Id. at 24.) On initial examination, it would seem that plaintiff's claims against Dr. Aguilera and Dr. Haile accrued on June 3, 2009, the date on which the conversation with "Dr. John Doe" occurred. Plaintiff describes at least one symptom in his grievance – passage of blood in his urine – that he later alleged in his FAC as stemming from the administration of Interferon and Ribavirin. Moreover, the fact that "Doctor John Doe" informed plaintiff that Ribavirin could have killed him would appear to have put plaintiff on notice of a potential Eighth Amendment violation.

On the other hand, in the FAC, plaintiff describes the following symptoms stemming from the administration of Interferon and Ribavirin: passage of blood in his urine and semen, blockage of his urinary tract, the development or reoccurrence of cancerous nodules in his bladder, and a resurgence and spread of his tuberculosis. Only one of these symptoms is described in the excerpt quoted above – passage of blood in the urine – and no explicit connection is drawn between this symptom and the administration of Ribavirin, either by plaintiff or by "Dr. John Doe."

Plaintiff contends that the statute of limitations should be deemed to begin to run on a later, unspecified date because when he "complained about the effects of Interferon and Ribavirin treatment, he was erroneously informed that the symptoms were simply normal side effects and

that his treatment was proper." (ECF No. 107 at 3.)  However, the court may not rely on this representation in deciding the limitations issue, for the allegation is nowhere to be found in the FAC.  The court is not free to infer, e.g., that plaintiff was reassured, after his interview with "Dr. John Doe" in June 2009, that the symptoms he was experiencing were not attributable to Interferon and Ribavirin.  As noted above in the discussion of Dr. Khaira's motion to dismiss, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  Hal Roach Studios, 896 F.2d at 1555 n.19.  Moreover, plaintiff has not alleged the date on which he knew, or had reason to know, that the symptoms alleged stemmed from administration of Interferon and Ribavirin.

It may be that, as defendants Dr. Aguilera and Dr. Haile contend, that plaintiff's claims are time-barred.  But, as with defendant Dr. Khaira's motion to dismiss, discussed above, the court lacks sufficient information to decide the issue at this stage of the proceedings.

The parties are therefore directed to proceed as follows.  Plaintiff will be ordered to file supplemental briefing on the issues of (i) whether Dr. Khaira may properly be named as a defendant under Section 1983 herein, and (ii) whether plaintiff's claims against defendants Dr. Aguilera and Dr. Haile are barred by the applicable statute of limitations.  Plaintiff's brief must be accompanied by a declaration, signed by plaintiff under penalty of perjury, which sets forth facts necessary to decide the instant motion.  With respect to his Section 1983 claim against Dr. Khaira, plaintiff should address the relationship between the defendant and CDCR.  With respect to his claim against Dr. Aguilera and Dr. Haile, plaintiff should make clear what he was told, when, and by whom, regarding the effects of Interferon and Ribavirin.  As discovery is still proceeding in this matter (see below), it is not the court's intention, by this order, to transform defendants' motions to dismiss into motions for summary judgment.  Accordingly, in his declaration, plaintiff may set forth necessary facts on information and belief, just as he would in a verified complaint, subject to the restrictions imposed by Rule 11.  Plaintiff may also support his supplemental briefing with any documents (such as medical records and inmate grievances) that would tend to support his arguments.  Defendants will be given an opportunity to respond as well.

////

Plaintiff's counsel is cautioned that, per Rule 11, by filing supplemental briefing, she will be certifying that "to the best of [her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support, or if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." Fed. R. Civ. P. 11(b)(3). Accordingly, if plaintiff's counsel determines that defendant Dr. Khaira is not susceptible to suit under Section 1983, she should dismiss this claim against him. Similarly, if plaintiff's counsel determines that, as of October 15, 2012, more than two years had passed since plaintiff knew, or had reason to know, of the injuries that gave rise to his claims against Dr. Aguilera and Dr. Haile, then she should similarly ensure that these defendants are promptly dismissed from the action.

### C. Stipulation to Reopen Discovery

One final matter requires the court's attention. On May 7, 2015, counsel for all parties filed a joint stipulation proposing to reopen discovery herein until October 30, 2015. (ECF No. 110). In their stipulation, the parties assert that the extension of time "will allow the parties to conduct written discovery pertaining to the new allegations in plaintiff's first amended complaint, as well as take depositions and issue subpoenas as necessary. Good cause being shown, the court will extend the discovery deadline until October 30, 2015.

## V. Conclusion

Based on the foregoing, IT IS HEREBY ORDERED that:

1. No later than June 19, 2015, plaintiff shall file a supplemental brief that addresses (i) whether plaintiff may properly name Dr. Khaira as a defendant under Section 1983, and (ii) whether plaintiff's claims against defendants Dr. Aguilera and Dr. Haile are barred by the applicable statute of limitations. Plaintiff's brief is to be accompanied by (i) a declaration made under penalty of perjury that sets forth pertinent facts, and (ii) any supporting documentation that would tend to support plaintiff's arguments. Defendants Dr. Khaira's, Dr. Aguilera's, and Dr. Beck's oppositions, if any, are due no later than July 17, 2015. Plaintiff's brief and defendants' opposition, may each be no more than 12 pages in length, exclusive of any supporting documentation.

2. The parties may conduct discovery herein until October 30, 2015. Any motions necessary to compel discovery shall be filed by that date. All requests for discovery pursuant to Federal Rules of Civil Procedure 31, 33, 34 or 36 shall be served not later than sixty days prior to that date.

Dated: May 22, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/syke2570.mtd.briefing